# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-20169-Civ-TORRES

KATHERINE MITCHELL CRUZ ORTIZ,
JOISELYN C. ROBLETO, and all others
similarly situated under 29 U.S.C. 216(b),

      Plaintiffs,

v.

N.H. INC. a/k/a MERIDIAN FOOD
MARKET, MONEY GRAM,
MOHAMMED HOSSAIN,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION
## FOR A DETERMINATION OF FEES AND COSTS

This matter is before the Court on N.H. Inc.'s ("N.H. Inc.") a/k/a Meridian Food Market, Money Gram, and Mohammed Hossain's ("Defendants") motion for a determination of fees and costs against Katherine Mitchell Cruz Ortiz and Joiselyn C. Robleto ("Plaintiffs"). [D.E. 60]. Plaintiffs responded on November 28, 2017 [D.E. 69] to which Defendants replied on December 5, 2017. [D.E. 70]. Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

1

## I. BACKGROUND

Plaintiffs filed this action pursuant to the Fair Labor Standards Act ("FLSA") for unpaid overtime wages during their employment as cash checking clerks. Plaintiff Ortiz sought unpaid wages from February 20, 2012 through January 9, 2017 and Plaintiff Robleto sought unpaid wages from June 1, 2012 through January 9, 2017. [D.E. 1]. Plaintiffs resigned their employment positions on January 9, 2017 and filed this action against Defendants on January 13, 2017. Plaintiffs alleged in their statement of claims that they worked sixty-five hours per week and that all of the time spent working over forty hours during any particular week was uncompensated.

On September 27, 2017, the Court permitted Plaintiffs to dismiss their claims against Defendants without prejudice. [D.E. 58]. In doing so, the Court held that if Plaintiffs decided to re-file this action at a later date, Plaintiffs would pay all taxable costs and attorneys' fees that Defendants incurred in defending this action. Plaintiffs were also ordered to preserve all documents that Defendants previously requested in discovery, including cell phone records and tax returns for the relevant time period that Plaintiffs alleged they were owed unpaid wages. If Plaintiffs failed to preserve the documents requested, their claims would be limited to the time period that Plaintiffs could sue for unpaid wages in any subsequent action.

## II.  ANALYSIS

Defendants' motion seeks an attorney fee award of $20,776.60 and costs of $1,088.90 following Plaintiffs' decision to voluntarily dismiss their claims without prejudice.  On November 13, 2017, the Court held that – in situations where courts have voluntarily dismissed a plaintiff's claims and awarded fees and costs – courts have determined those amounts *before* a plaintiff re-files.  *See, e.g., Paul v. Georgia S.*, 2010 WL 4639239, at *2 (M.D. Ga. Nov. 4, 2010) ("The Court believes an attorney's fees and costs *assessment is appropriate here*.  In the event Plaintiffs ever refile any action against Defendant upon these or substantially similar facts in any court, Plaintiffs will be required to pay the costs and attorney's fees Defendant incurred in defending this action.") (emphasis added); *Tesma v. Maddox-Joines, Inc.*, 254 F.R.D. 699, 702 (S.D. Fla. 2008) ("By *noon* on *Tuesday, January 6, 2008,* Defendant shall file with the Clerk of this Court a Memorandum together with supporting Affidavits and Exhibits consistent with Local Rule 7.3 of the United States District Court for the Southern District of Florida establishing the fees and costs incurred in the defense of this action") (emphasis in original); *Jones v. Smartvideo Techs., Inc.*, 2007 WL 1655855, at *4 (N.D. Ga. June 4, 2007) ("If Plaintiff wishes to refile, he should reimburse Defendants the costs and fees they incurred in preparing for Plaintiff's deposition.  So that the amount to be paid as a condition of refiling may be known, Defendants shall file within five (5) days an affidavit describing the costs and fees incurred for this Court's approval.").  Therefore,

3

Defendants are entitled to a determination of their reasonable attorneys' fees and costs.

In reaching our determination of the appropriate fee award in this case, we acknowledge that in awarding attorneys' fees "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). Courts have considerable discretion when determining whether a party to a case should receive a fee award. *See Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299-1302 (11th Cir. 1988). It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior

understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

In determining an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id*.

More specifically, the lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1299*; Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302. Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id*. at 1304 (citation omitted).

5

A. *Reasonable Hourly Rate*

The first step is to determine the reasonable hourly rate. The Eleventh Circuit defines the reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation."  *Norman,* 836 F.2d at 1299.  Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.*[1]  The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate.  *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.").  Ultimately, the Court remains an expert on

---

1   The 12 *Johnson* factors are as follows:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).

6

the issue of hourly rates in its community, and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

The Florida Supreme Court has also provided guidance in determining a reasonable rate under the lodestar method:

> In establishing this hourly rate, the court should assume the fee will be paid irrespective of the result, and take into account all of the Disciplinary Rule 2-106 factors except the "time and labor required," the "novelty and difficulty of the question involved," the "results obtained," and "[w]hether the fee is fixed or contingent." The party who seeks the fees carries the burden of establishing the prevailing "market rate," *i.e.,* the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services.

*Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150–51 (Fla. 1985) *holding modified by Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990)). And the Eleventh Circuit has emphasized that "[l]egal skill may be a function of experience, but that is not always the case. Further, legal skill has no intrinsic value unless it is used to further the client's interest, which is to obtain a just result quickly and economically." *Norman*, 836 F.2d at 1300.

Defendants submit Mrs. Langbein's declaration in support of her hourly rate along with a redacted billing statement which details the work performed. Mrs. Langbein graduated from the University of Florida with high honors in 1974 and she received her law degree from Nova University in 1980. Mrs. Langbein has practiced in the area of labor and employment for 37 years and has been employed in several

prestigious positions throughout her legal career. She claims that her normal hourly rate in labor and employment litigation varies from $325.00 to $400.00 per hour and that she been awarded fees at the $400 per hour rate in prior cases. However, Mrs. Langbein only seeks an hourly rate at the lowest end of that spectrum in support of her request for $20,776.60 in fees.

Defendants' arguments are well taken with respect to Mrs. Langbein's requested hourly rate, especially given the lack of opposition from Plaintiffs.[2] And after an independent review of the prevailing market rate for wage and employment attorneys in the Southern District, including a thorough consideration of the 12 *Johnson* factors, we find that $325 per hour is more than reasonable for an attorney who has practiced in this field for nearly four decades. *See, e.g.*, *Rodriguez v. Demolition King, Inc.*, 2015 WL 3970570, at *4 (S.D. Fla. June 30, 2015) ("While the undersigned recognizes that Mr. Pollack is a skilled attorney, the undersigned finds that an hourly rate of $400.00 per hour is too high of an hourly rate for this typical Fair Labor Standards Act case, and further finds that an hourly rate of $350.00 per hour is more appropriate for an attorney of Mr. Pollack's experience in this Fair Labor Standards Act case."); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1351 (S.D. Fla. 2007) ("[T]he Court will grant Kleppin fees at the rate of $270 an hour, which is the top of the range suggested by the Defendant's expert for an

---

2   In Plaintiffs' response, they argue that Mrs. Langbein should be paid no more than $10,075 for 31 hours worked – i.e. an hourly rate of $325 (which Plaintiffs believe should be subsequently reduced by two-thirds). Therefore, Plaintiffs do not oppose Mrs. Langbein's hourly rate.

Associate who has been practicing for between 5-8 years."). When coupled with the Court's own expertise in awarding fees in similar cases, together with a review of the record and supporting materials submitted in support thereof, we conclude that a $325.00 hourly rate is appropriate for Mrs. Langbein. Therefore, to this extent, Defendants' motion is **GRANTED**.

### B. *Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended in the case. The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel.*" *A.C.L.U. of Georgia*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. *See A.C.L.U. of Georgia*, 168 F.3d at 428. If the fee applicant fails to exercise required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* at 428. And if there is inadequate documentation supporting the number of hours expended, the court may reduce those hours accordingly. *See Florida Patient's Comp. Fund v. Rowe,* 472 So.2d 1145, 1150 (Fla.1985); *see also Loper v. New York City Police Dep't,* 853 F. Supp. 716, 721 (S.D.N.Y. 1994) ("[W]here

9

adequate contemporaneous records have not been kept, the court should not award the full amount requested").

As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303. "If the court concludes that the number of claimed hours is excessive, it may engage in 'an across-the-board cut,' so long as it provides adequate explanation for the decrease." *Galdames v. N & D Inv. Corp.,* 432 F. App'x 801, 806 (11th Cir. 2001). Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id*. at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Mrs. Langbein billed 64 hours to defend this case. Mrs. Langbein's time entries, amongst other things, range from telephone calls, drafting motions, e-mail communications, revisions to various drafts, and research, and preparing for depositions. Plaintiffs argue that Mrs. Langbein's time sheets are excessive because Mrs. Langbein billed 26.7 hours for frivolous work conducted *after* Plaintiffs filed their motions for voluntary dismissal. Plaintiffs also contend that Defendants had no legitimate reason to continue accruing fees when Plaintiffs sought to dismiss their claims without prejudice. As such, Plaintiffs conclude that after they filed their motions for voluntary dismissal on August 22, 2017, any fees after that date are improper and should be rejected.

10

We disagree in part. While we will not completely rehash the sequence of events that post-date Plaintiffs' motions to voluntarily dismissal their claims, Mrs. Langbein had to incur some fees to adequately represent the interests of her clients. For instance, there was no Court Order excusing Plaintiffs from responding to written discovery or appearing at their depositions simply because Plaintiffs had recently filed their motions to voluntarily dismiss their claims. In other words, Defendants incurred fees to *comply* with the Court's Orders and additional costs to enforce those Orders. Moreover, Mrs. Langbein had to conduct research and spend time preparing responses to Plaintiffs' motion for sanctions that was filed after Plaintiffs' motion to voluntarily dismiss their claims. Therefore, Plaintiffs' argument – that all attorney work after August 22, 2017 should be discredited – lacks merit.

Second, Plaintiffs contend that Mrs. Langbein spent an excessive amount of time (7.8 hours to be exact) to draft a response to Plaintiffs' motion for sanctions. Plaintiffs explain that Mrs. Langbein has practiced in labor and employment for 37 years, yet claims 7.8 hours for a response motion that is virtually a replication of a response she filed in another case. Plaintiffs accuse Mrs. Langbein's response to be a mere copy and paste job with minor edits and suggest that her request for 7.8 hours in attorney work is excessive.

Mrs. Langbein argues that despite her many years as a lawyer, she has never been the subject of a motion for sanctions. In order to protect her client from

11

Plaintiffs' allegations, as well as herself, Mrs. Langbein claims that she had to review the entire transcript of Mr. Hossain's deposition to determine the context of the alleged misconduct. Mrs. Langbein also argues that she had to research whether courts had ever sanctioned a party or its attorney for similar conduct and that she needed additional to respond to Plaintiffs' motion.

We agree with Mrs. Langbein that a response to Plaintiffs' motion for sanctions may have required more work than usual. However, we also find that 7.8 hours is partly excessive especially given Mrs. Langbein's experience of the underlying principles when a party moves for sanctions.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783). A court may not, however, do both. *See Bivins*, 548 F.3d at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours"). In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger*, 10 F.3d at 783 (holding that where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis[; r]ather, . . . it may [] reduce [the hours devoted

12

to litigation] in gross if a review of the resubmitted fee request warrants such a reduction") (emphasis added)). "In such cases, an across-the-board cut may be appropriate, as long as a court "articulate[s] [its] reasons for selecting specific percentage reductions." *Roy v. Bd. of Cty. Comm'rs, Walton Cty., Fla.*, 2012 WL 8013976, at \*4 (N.D. Fla. Nov. 1, 2012), *Report and Recommendation adopted*, 2013 WL 1883247 (N.D. Fla. May 6, 2013) (quoting *Loranger*, 10 F.3d at 783).

Here, we are only concerned with two related time entries of 7.8 hours. And the fee documentation is not so voluminous that an hour-by-hour review is impractical. As such, we reduce Mrs. Langbein's time billed in responding to Plaintiffs' motion for sanctions from 7.8 to 2.0 hours to reflect a reasonable amount of time for a lawyer of Mrs. Langbein's experience to respond to a motion for sanctions.

Plaintiffs' third argument is that Mrs. Langbein's fees should be reduced for block-billing, improper redactions, and vague billing. Yet, this contention is unpersuasive because Plaintiffs never specifically identify which entries meet the aforementioned criteria. Therefore, Plaintiffs' objections are overruled as conclusory. *See Club Madonna, Inc. v. City of Miami Beach*, 2015 WL 5559894, at \*6 (S.D. Fla. Sept. 22, 2015) ("With respect to Plaintiffs' repeated claims that the City engaged in 'block billing and/or redundant and duplicative billing,' the objection is overruled . . . as conclusory") (citing *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir.

1988) ("Frivolous, conclusive, or general objections need not be considered by the district court.")).

After a complete review of all the remaining time entries that Plaintiffs take issue with in their response, the only entries that appear to be unreasonable are the time allotments on June 13, August 21, and August 23, 2017. Beginning with the time entry on June 13, Mrs. Langbein billed 4.3 hours to research and draft a response to Plaintiffs' motion to disqualify. While we recognize the complexities that were involved in Plaintiffs' motion, we find that an attorney of Mrs. Langbein's experience could have reasonably performed the same amount in 2 hours or less. Therefore, we reduce Mrs. Langbein's billed time from 4.3 hours to 2 hours.

On August 21, Mrs. Langbein billed 3.80 hours for preparing for a deposition that Plaintiffs explained that they would not attend. Without more information as to why 3.8 hours was billed to prepare for a deposition that Plaintiffs stated they would not attend, we reduce this time entry to 2 hours. The final time entry that appears unreasonable is Mrs. Langbein's response to Plaintiff's motion for protective order. Mrs. Langbein billed her time as 4.2 hours, yet there is no persuasive reason as to why an attorney of her experience could not have completed the same amount of work in 2 hours or less. Therefore, we reduce this allotment from 4.2 hours to 2 hours.

As for Plaintiffs' remaining challenges to Defendants' time entries, we find that they are all without merit because Mrs. Langbein has adequately demonstrated

14

in her papers that additional time was needed to respond to, amongst other things, Plaintiffs' motions and discovery practices. Therefore, we reduce Mrs. Langbein's requested hours from 64 to 51.9 and, to this extent, Defendants' motion for an attorney fee award is **GRANTED in part** and **DENIED in part**.

### C. *Fee Multiplier*

After determining the lodestar . . . the court must determine the necessity of an adjustment for the results obtained." *Coy v. Allstate Floridian Ins. Corp.*, 2007 WL 1732098, at *8 (M.D. Fla. June 14, 2007) (citing *Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1302 (11th Cir. 1988)). Florida courts "routinely approves fees that reward lawyers for pursuing cases that have little chance of success." *Progressive Express Ins. Co., v. Schultz*, 948 So. 2d 1027, 1032 (Fla. 5th DCA 2007). In other words, "the riskier the case the greater the multiplier." *Id.*

Generally, to determine the necessity of a fee multiplier[3], courts consider the following three factors:

> 1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel;
>
> 2) whether the attorney was able to mitigate the risk of nonpayment in any way; and
>
> 3) whether any of the factors set forth in *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985), are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client

---

[3] Neither party raised this as an issue for the Court. We merely discuss it for the purposes of being thorough in our consideration of Defendants' motion.

15

*Quanstrom*, 555 So. 2d at 834. It is well settled that "factors that are adequately accounted for in the lodestar cannot be the basis for enhancing the lodestar." *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1272 (M.D. Fla. 2010) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)). And the "party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue*, 559 U.S. at 546.

With respect to the first prong, Florida courts have ruled that this is the most important factor for consideration because it concerns the party's difficulty in finding competent counsel without the use of a multiplier. *See Sun Bank of Ocala v. Ford*, 564 So. 2d 1078, 1079 (Fla. 1990) ("[B]efore adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market") (citation omitted)).

The first factor is lacking because a fee multiplier was not needed to obtain competent counsel in a labor and employment case. In other words, there is no persuasive showing in the record that either party would have had "substantial difficulty" in obtaining competent counsel given the facts presented. Indeed, as the number of similar cases filed in this Court illustrates, a plethora of experienced practitioners routinely pursue these cases on a daily basis. Furthermore, the second factor fails because this case is not "rare" or "exceptional." *See Perdue*, 559 U.S. at

16

543 (finding that "an enhancement may be awarded in 'rare' and 'exceptional' circumstances."). And the third factor is not met because the complexity of the action is adequately accounted for in the lodestar computation. Therefore, there is no evidence that a fee multiplier is appropriate in this case.

### D.   *Taxable Costs*

The final issue is Defendants' request to recover their reasonable costs under 28 U.S.C. § 1920.[4] *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920). "To defeat the presumption and deny full costs, a district court must have a sound basis for doing so." *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000). Upon the filing of a timely motion or bill of costs, which sets forth in detail the amounts requested, the opposing party has the burden of showing that the costs requested fall outside the scope of this statute or were otherwise unreasonable. *See, e.g., Eugene v. 3Don & Partner Estate Group, LLC*, 2009 WL 996016, at *14 (S.D. Fla. Apr. 14, 2009) (finding that the burden lies

---

[4]   The following costs are permitted under 28 U.S.C. § 1920:

(1)   Fees of the clerk and marshal;
(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)   Fees and disbursements for printing and witnesses;
(4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)   Docket fees under section 1923 of this title;
(6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

with the challenging party to show that depositions were not related to an issue in the case at the time they were taken, and thereby show they were not wholly or partially "necessarily obtained for use in the case."). Ultimately, the decision to award costs is discretionary, but the Court can only tax items enumerated in 28 U.S.C. § 1920, absent contractual or statutory authority. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

Defendants seek $1,074.70 in costs, which include the cost of obtaining Mr. Hossain's deposition (which Defendants believe was necessary to defend against Plaintiffs' motion for sanctions for alleged deposition misconduct), court reporter attendance fees, certificates of non-appearance for Plaintiffs' scheduled depositions, and the interpreter's attendance fee for their non-appearance at depositions. In response, Plaintiffs argue that Defendants' request for costs should be denied because Plaintiffs failed to include a standard form bill of costs to Defendants' motion as required in Local Rule 7.3. Plaintiffs contend that Defendants' failure to comply with the Local Rule should be a persuasive basis alone to deny all of the requested costs in Defendants' motion. Defendants appear to concede that a bill of costs was not filed along with their motion, but claim that Plaintiffs were well aware of the costs Defendants would seek in an email exchange prior to the filing of Defendants' motion. [D.E. 70-1].

Local Rule 7.3 states, in pertinent part, the following:

> A bill of costs pursuant to 28 U.S.C. § 1920 *shall be filed and served* within thirty (30) days of entry of final judgment or other appealable

18

> order that gives rise to a right to tax costs under the circumstances listed in 28 U.S.C. § 1920. An application for a bill of costs must be submitted on form (or in form substantially similar to) AO 133 of the Administrative Office of the United States Courts. The bill of costs should attach copies of any documentation showing the amount of costs.

S.D. FLA. L.R. 7.3(c) (emphasis added). It is clear that, even if Defendants explained their costs to Plaintiffs in an email exchange prior to the filing of Defendants' motion, Defendants failed to *file* their bill of costs as required for the Court's purposes. The reason a bill of costs is required is because it allows the Court to determine whether the items obtained were necessary for the use in a case. Many parties have advanced Defendants' argument before, yet courts in our district have frequently held that Rule 7.3 must be *strictly* followed in order to grant relief. *See, e.g.*, *Hodge v. McNeil*, 2012 WL 663180, at *2 (S.D. Fla. Feb. 28, 2012) (defendants conceding that they failed to comply with Rule 7,3 but asserting that "'Plaintiff was in possession of all information required to evaluate Defendant's Motion for Costs within the 30 day time-frame.' However, this is plainly insufficient for the Court's purposes.") (internal citation omitted) (citing *Royal Surplus Lines Ins. Co. v. Coachmen Industries, Inc.*, 229 F.R.D. 695, 698 (M.D. Fla. 2005)). Accordingly, we decline to award Defendants any taxable costs and, to this extent, Defendants' motion is **DENIED**.

### III.     CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendants' motion for a determination of fees is **GRANTED in part** and **DENIED in part**. [D.E. 60]. If Plaintiffs re-file their claims against Defendants, Plaintiffs shall pay Defendants $16,867.50 (51.9 hours at a $325 hourly rate) in attorneys' fees *before* that action may proceed.

2. As for Defendants' request for taxable costs in the amount of $1,074.70 under 28 U.S.C. § 1920, Defendants' motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 12th day of December, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge